A MINOR, Appellant, *v.* JUVENILE DIVISION OF THE SEVENTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF LINCOLN, Respondent.

No. 12482

A MINOR, Appellant, *v.* JUVENILE DIVISION, THIRD JUDICIAL DISTRICT COURT, COUNTY OF CHURCHILL, Respondent.

No. 12645

June 16, 1981                                   630 P.2d 245

*Norman Y. Herring,* Nevada State Public Defender; *J. Gregory Damm,* Chief Deputy, Carson City, for Appellants.

*John McGimsey,* District Attorney, Lincoln County and *John S. Hill,* District Attorney, Churchill County, respectively, for Respondents.

## OPINION

By the Court, SPRINGER, J.:

These two consolidated appeals challenge the legality of the commitments of two children to Nevada's "juvenile correctional institutions," the Nevada Youth Training Center and the Nevada Girls Training Center.

### STATEMENT OF FACTS

*Appeal No. 12842, Ivan:*

Ivan was brought before the juvenile division of the Seventh Judicial District Court, Lincoln County, by a petition filed November 13, 1979 by one Roland Simmons. The petition states that "on or about November 6, 1979, in Caliente Nevada, IVAN . . . disregarded proper directions from his parent . . . by becoming intoxicated and is beyond her control, and is consiquently [*sic*] a child in need of supervision as defined by NRS 201.090."[1]

---

[1] There was another charge, "COUNT II," in the same words except for the date, November 9, rather than November 6. This charge was dismissed by the district attorney.

Ivan appeared before the juvenile court on November 20, 1979, and "elected to represent himself." After an unreported hearing in which testimony was presented, the court found that "sufficient evidence was presented to prove that the said minor child committed the act of delinquency" and found therefore that he "committed the act and is a child in need of supervision." At the same hearing and on the same date, Ivan was "placed on indefinite probation."

Later, on December 6, 1979, the court issued a more formal, detailed supplemental "order placing minor on probation." In this order it was found that the child "had violated NRS 201.090 [and] is a Child in Need of Supervision."

The dispositional order of December 6 was quite explicit. It ordered the child to "attend school regularly" and "not to be tardy or absent unless a good and sufficient reason exists."

On January 16, 1980, another petition was filed in this matter by one Sandy Prince. As with the first petitioner, Roland Simmons, neither the title nor capacity of Sandy Prince is stated in the petition. This second petition states that Ivan has been "found to have been a child in need of supervision," that he had been placed on probation and that he had "violated the rules of probation" in a number of particulars. The petition prays that "probation of the above-named minor be terminated, and that the said minor be committed to the Nevada Youth Training Center at Elko, Nevada."

On January 25, 1980, the minor appeared before the court to plead to the January 16 petition. A public defender was appointed to represent Ivan. A "Transcript of Tape" of this hearing appears in the record. From this transcript we find appointed counsel saying on behalf of the minor; "[W]e do admit that he has missed some classes and has had some attitude and cooperation problems at school." Such a statement was in apparent response to charges of probation violation made in the petition that Ivan "refuses to attend some of his classes"[2] and that he "exhibits a poor attitude at school."[3] There was never any subsequent order indicating adjudication of delinquency, probation violation or other status.

---

[2]It is doubtful that an admission that he "missed some classes" can be accepted when the charge is that he "*refuses* to attend." In the transcript we find Ivan responding to the court's inquiry about missing classes in this way: "OK on the first class first period class they she kicked me out and told me I couldn't come back to school because on (sic) not bringing my materials to school." (Court's emphasis.)

[3]Having a "poor attitude" is so obviously vague that it must be rejected out-of-hand as a basis for deprivation of Ivan's liberty.

On February 8, 1980, Ivan appeared before the court for disposition. His attorney was not present, but the order recites that his attorney was made a part of the proceeding by virtue of a conference call. The probation officer recommended a "structured setting" (but not the Elko training center). The consulting psychologist recommended "rehabilitative care, custody, treatment and education . . . short of continued incarceration and institutionalization . . ." The court "ORDERED that IVAN P. be committed to the Nevada Youth Training Center, at Elko, Nevada," and further ordered that the commitment be suspended during placement in the Nevada Children's Home.

Ivan appeals from the order committing him to the Nevada Youth Training Center.

*Appeal No. 12645, Sandee:*

The first juvenile court petition in Sandee's case was filed on December 12, 1979. The petition is filed by Robert A. Hettinger, designated in the petition as a "Juvenile Probation Officer." The petition clearly states that the child is alleged to be a child in need of supervision.

Pending hearing on the petition, the child was temporarily placed with her grandmother. The placement did not work out, as, according to the juvenile probation officer, the child became uncontrollable and a run-away threat. This situation resulted in her being detained on February 6, 1980, in the Churchill County detention facility.

Although there is no transcript of the event, it appears in a recital in the Order filed February 21, 1980, that on February 14, 1980, Sandee, with her attorney, appeared before the court and admitted that she was an unmanageable child. Based upon that admission, the court found that Sandee was a child in need of supervision as defined by the Juvenile Court Act.

As appears from the formal order relating to that hearing, the court, without directing the preparation of a predisposition study and report,[4] proceeded directly to the dispositional phase declaring Sandee to be a ward of the court, placing the child on probation in the care of the Cenikor Foundation, Denver, Colorado, and ordering that she abide by the rules and regulations of the Cenikor program.

---

[4] NRS 62.197 requires that the court *shall* "direct that a predisposition study and report to the court be made in writing by a probation officer or another agency authorized by law, concerning the child, his family, his environment and other matters relevant to the need for treatment or disposition of the case." It has been held "that it is error to commit a juvenile without such a report." In Interest of R. D., 405 N.E.2d 460 (Ill.App. 1980).

On April 29, 1980, Probation Officer Hettinger signed and filed an unverified "Motion to Modify Order." The motion recited the adjudication and disposition set forth in the previous order and stated that the Cenikor Foundation had informed him that Sandee had become unmanageable. On this basis Officer Hettinger "moved" the court for an order that the minor be returned to the Churchill County Probation Department "for further proceedings."

Sandee was returned to Churchill County on April 10, 1980, and remained in detention until May 5, 1980, at which time the "Motion to Modify Order" filed by Officer Hettinger came on for hearing. Sandee's counsel stated: "I admit that Sandee is back here pursuant to her inability to function in that program."

Without there having been filed a delinquency petition and without benefit of a predisposition study and report, the court proceeded to disposition on the "Motion to Modify Order." Sandee's attorney called it to the court's attention that "there has never been a determination in this case that Sandee is a delinquent child."

The court made this observation:

> All right. Well the statute provides, I believe, that when a child has been declared a child in need of supervision, and who has been afforded probation, and probation is subsequently revoked for a violation of the terms and conditions of probation, in spite of the fact there has been no finding of delinquency, that a commitment to Caliente is permissible.

It was then ordered that "probation be revoked and that she be remanded to the care, custody and control of the Superintendent of the Nevada Girls' Training Center at Caliente, Nevada, for an indefinite period of time."

## DECISION

The decision in this case requires the answering of two questions. The first question is: What children may be properly, legally and constitutionally committed to Nevada's juvenile correctional institutions? The answer to this question is: Only children who have been adjudicated by the juvenile court to be delinquent may be so committed.

The second question is: Have the children before us, Ivan and Sandee, been properly, lawfully and constitutionally

adjudicated by the juvenile court to be delinquents. The answer to this question is: No.

1. *Who May be Committed to Training Centers?*

Nevada's training centers are provided for in the crimes and punishment portion of our criminal code, particularly in NRS Chapter 210, entitled "Juvenile Correctional Institutions."

The Nevada Youth Training Center, to which Ivan was committed, is "established and maintained for the care of minors *adjudged delinquent* and *committed[5] thereto.*" NRS 210.010(3). (Court's emphasis.)

Under the heading "Inmates" NRS 210.180 provides for the "commitment of delinquents" and declares it "lawful for the courts to commit to the school those minor persons between the ages of 8 and 18 years whom they have *found to be delinquents as provided by law.*" (Court's emphasis.)

Sandee faces a similar incarceration as an "inmate" in a "juvenile correctional institution," where, under NRS 210.580(1) it is declared "lawful" to "commit" girls "found to be delinquent as provided by law."

Whatever else these "correctional institutions" might be, they are clearly to some degree punitive in nature. "[H]owever euphemistic the title, a 'receiving home' or an 'industrial school' [or a "training center"] for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time." An inmate's "world is peopled by guards, custodians, state employees, and 'delinquents' confined with him . . ." In re Gault, 387 U.S. 1, 27 (1967).

Training centers are meant to house delinquents and delinquents only. We hold that nondelinquent children[6] coming within the jurisdiction of the juvenile court may not be committed to the juvenile correctional institutions, the training centers, described in Chapter 210, NRS.

Even if the statute did not limit training center commitment

---

[5]"commitment, n. * * * 2. Official consignment, as to a prison or mental hospital. 3. Law. A court order authorizing consignment to a prison; mittimus . . ." THE AMERICAN HERITAGE DICTIONARY OF THE AMERICAN LANGUAGE, 268, New College Edition, (1978).

[6]In addition to jurisdiction over delinquents juvenile courts have jurisdiction over nondelinquent children who are neglected, abandoned, in need of commitment to an institution for the mentally retarded or in need of supervision. The latter child, the so-called CHINS, is expressly excluded from consideration as a delinquent. NRS 62.040(1)(b).

to children "found to be delinquent," we should have to hold on other legal and constitutional grounds that the juvenile courts do not have the power to commit nondelinquent children to these punitive institutions.

There is a sound legal and philosophical basis for the incarceration of delinquents. The state has plenary power to control criminal activity and to punish criminals. Even though our present juvenile court act (NRS 62.193) provides that proceedings "against any child shall not be deemed to be criminal in nature," the legislature could, if it chose, repeal this legislation and punish youthful violators in the criminal justice system as was done in the past.

The state, then, has the inherent power to punish delinquent children by committing them involuntarily to correctional institutions. It does not, however, have such power over nondelinquent children.

Nondelinquent children within the jurisdiction of the juvenile court have, by definition, committed no punishable crime. Jurisdiction over these kinds of children is derived not from the criminal law but rather from equity and application of the equitable doctrine, *parens patriae.* Such children, then, must be treated by the state in a manner consistent with its inherent and sovereign *parens patriae* power; that is, they must be helped and not punished.

Because these children have committed no crimes and are brought under the protective arm of the court for help, it has been held to be an unconstitutional and invidious discrimination to treat them as we do criminals by punishment and incarceration. Harris v. Calendine, 233 S.E.2d 318 (W.Va. 1977). Incarceration of nondelinquent children has also been held to be a denial of substantive due process because of the lack of rational connection between punitive incarceration and the proclaimed ends of *parens patriae* jurisdiction, namely the protection and rehabilitation of dependent and neglected children and of troubled and rebellious yet noncriminal children. *See Harris,* above.

The conclusion is inescapable that commitment of nondelinquent children to Nevada's training centers cannot be approved. We must, then, proceed to examine the second question, that relating to the adjudication of delinquency.

2.   *Has Ivan or Sandee Been Found to be Delinquent?*

In this state delinquency is a status created by a child's commission of a criminal offense or by an unlawful violation of

"an order of court" by a child who has been determined to be a child in need of supervision. NRS 62.040(1)(c).[7]

Before a child can be adjudicated to be a delinquent, there must be a formal and specific charge of acts constituting delinquency and the sustaining of such charge by voluntary admission or proof beyond a reasonable doubt. NRS 62.193(4).

Since the cases before us do not involve the commission of criminal offenses, delinquency adjudication is possible only under NRS 62.040(1)(c)(2), delinquency arising out of the express violation of an order of court by a child already under juvenile court jurisdiction as a child in need of supervision.

To sustain an adjudication of delinquency under NRS 62.040(1)(c)(2) and thereby justify commitment to a training center, there must be:

(1) notice that the child is being charged as a delinquent and thus subject to possible incarceration;

(2) proper adjudication of the child as a child in need of supervision;

(3) an express and intelligible order of court accompanying the determination of CHINS[8] status;

(4) a proven or admitted willful violation of the court's order;

(5) formal adjudication of delinquent status based on admitted or proven violation of the court's order.

Each of the two cases before us is lacking in one or more of these requisites; thus there can be no delinquency adjudication and therefore no lawful commitment order in either case.

Taken point by point:

(a) *Charging delinquency.*   A minor must be put on notice

---

[7]NRS 62.040(1)(c) provides:

62.040   Exclusive original jurisdiction of court.

1.   Except as otherwise provided in this chapter, the court has exclusive original jurisdiction in proceedings:

(c) Concerning any child living or found within the county who has committed a delinquent act. A child commits a delinquent act if he:

(1) Commits an act designated a crime under the law of the State of Nevada except murder or attempted murder, or violates a county or municipal ordinance or any rule or regulation having the force of law; or

(2) Violates the terms or conditions of any order of court determining that he is a child in need of supervision.

[8]CHINS is the commonly used abbreviation for the phrase "child in need of supervision."

that he is being charged with delinquency. This can be done fairly and adequately only by the inclusion in the charging portion of the juvenile court petition a statement that delinquency adjudication is the object of the petition and the charge. This notice of charges lets the juvenile know that his liberty is now in jeopardy and puts into operation the constitutional protections and procedural requirements imposed by the rulings in *Kent, Gault, Winship* and *McKeiver.*[9]

Neither child in these cases was charged with delinquency; therefore, neither can be adjudicated a delinquent.[10]

(b) *CHINS Adjudication.*   On the record, liberally construed, Sandee was properly adjudicated as a child in need of supervision; Ivan was not.

Ivan is charged under a criminal statute, NRS 201.090. He was thereafter found to have "violated NRS 201.090", to have "committed the act of delinquency," and, then, paradoxically, to be "a Child in Need of Supervision."

The adjudicatory phase of Ivan's proceedings were not reported, and it is not clear whether he admitted the CHINS petition or was found by the court to have this status. In any event, the record does show that Ivan's CHINS adjudication was in the opinion of the court based on "sufficient evidence . . . to prove . . . that he committed the act of delinquency" charged in "Count 1" of the petition.

This entanglement of charges, weaving bits and pieces of delinquency, status offense and violation of the criminal law, brings about a level of confusion which renders it impossible to sustain any kind of consequent adjudication. Most certainly there is not to be found any jurisdictional basis for a CHINS adjudication.

CHINS jurisdiction is dependent upon a showing, not of the violation of the criminal law, but rather upon a showing of a

---

[9]Kent v. U.S., 383 U.S. 541 (1966); In re Gault, 387 U.S. 1 (1967); In re Winship, 397 U.S. 358 (1970); McKeiver v. Pennsylvania, 403 U.S. 528 (1971).

[10]We note here the error of the trial court in Sandee's case in commenting, as quoted in the statement of facts above, to the effect that commitment is justified by mere probation violation and revocation "in spite of the fact there has been no finding of delinquency." State v. Doe, 619 P.2d 194 (N.M.App. 1980). There, of course, must be a "finding of delinquency." Such finding must be based on a delinquency petition "prepared and countersigned by the district attorney." NRS 62.128(1). Obviously the "motion" filed by Officer Hettinger could not support a delinquency charge even if one had been made.

status or condition of the subject minor. A child subjects himself to adjudication as a child in need of supervision if he (1) is "habitually" truant, or (2) is "habitually" disobedient and unmanageable or (3) is a runaway. If a child falls within any of the three enumerated categories "*and* is in need of care or rehabilitation," he may be adjudicated to be a child in need of supervision; "[s]uch a child shall *not* be considered a delinquent." NRS 62.040(1)(b). (Court's emphasis.)

Ivan's petition does state that he "disregarded proper directions from his parent . . . by becoming intoxicated and is beyond her control." A finding of CHINS status could then relate only to the category of unmanageability provided for in NRS 62.040(1)(b)(2). To support a finding under this subsection, it should have been charged and found that Ivan:

    1. "Habitually disobeys the reasonable and lawful demands of his parents . . ."
    2. "and is unmanageable; . . ."
    3. "and is in need of care or rehabilitation."

The petition refers not to Ivan's habitual disobedience but rather to an isolated act of disobedience ("becoming intoxicated" on November 6, 1979). There is no allegation or mention of any "need of care or rehabilitation." With good reason the legislature does not permit the juvenile court to take jurisdiction over children in cases of single or isolated instances of disobedience; otherwise there would not be a child in the state immune from juvenile court intervention.

For these reasons,[11] Ivan has not been properly adjudicated a child in need of supervision; consequently there is no possibility of his being adjudicated a delinquent under NRS 62.040(1)(c)(2).

(c) *Court Order Stating Specific Terms or Conditions.* This factor is adequately presented in both cases.

(d) *Violation of Court Order.* The gist of a delinquency charge under NRS 62.040(1)(c)(2) is a willful violation of a lawful court order. It is akin to criminal contempt. An innocent or

---

[11]We note other defects in the proceedings in Ivan's case which, although not jurisdictional or dispositive, are worthy of mention for the guidance of juvenile courts in these matters. One such defect is the failure of the petition to recite the capacity of the petitioner. Only certain persons may sign a CHINS petition. NRS 62.130(2). This capacity does not appear on the face of the petition. The other defect is failure to append "an explanation of the contents of NRS 62.275" relating to sealing of juvenile records. NRS 62.205.

inadvertent failure to conform to a probation order cannot form the basis for delinquency adjudication because the necessary mental component, a juvenile court analogue of *mens rea,* would be absent.

In the instant cases admissions on the part of the minors provide the only possible basis for a finding of delinquent violations of court orders.

Since neither minor stands accused of delinquency, it is obviously impossible for either to have been found guilty of delinquency. Still we are constrained to remark concerning the nature and form of the so-called admissions in these cases.

For a minor to admit a delinquent act and accept the consequences of delinquency, namely possible incarceration, due process requires that the admission be voluntarily and understandingly given.

The admission given by Ivan's counsel that Ivan "missed some classes and has some attitude and cooperation problems at school" and the admission given by Sandee's counsel that she was "back here pursuant to her inability to function in that program" hardly form the basis for a delinquency adjudication.

Such admissions do not constitute the type of delinquent behavior contemplated by NRS 62.040(1)(c)(2) nor do they appear to have been voluntarily and understandingly given.[12]

(e) *Delinquency Adjudication.* As stated above, Sandee's attorney pointed out to the court that there had been no "determination in this case that Sandee is a delinquent child." The attorney was correct; Sandee was never adjudicated to be a delinquent.

The same is true in Ivan's case; however, some three months after the filing of Ivan's appeal Ivan's counsel filed in the Supreme Court a stipulation that the juvenile court had "found the Minor to have been deliquent [sic] although the Order of the Court pertaining to the hearing is devoid of mention of such finding." Such a stipulation cannot alone be relied

---

[12] *See* Hanley v. State, 97 Nev. 130, 624 P.2d 1387 (1981), for general guidelines concerning voluntary admissions. We do not here hold these standards expressly applicable to juvenile court proceedings, but due process certainly requires that admissions of delinquent conduct must be given in a voluntary and understanding manner.

on to support a delinquency adjudication. (*See* State v. Doe, 619 P.2d 194 (N.M.App. 1980) note 3, in which a like stipulation was held not to authorize delinquency adjudication in the absence of inquiry that there was a factual basis for an admission of delinquency.) Ivan was never adjudicated to be a delinquent.

In this opinion we have gone into a more detailed factual and legal discussion than we would ordinarily have done had we not felt the need for a unifying exposition of juvenile court principles and procedures in matters presented here.

The key point here is the recognition of the special nature of delinquency jurisdiction. This jurisdiction is now set forth in a separate section in the Nevada Juvenile Court Act, apart from other nondelinquent jurisdictional divisions of neglect, dependency and status offenses, which are of noncriminal, *parens patriae* cognizance. *Gault,* above, tells us in unmistakable terms that if a proceeding may result in incarceration in an institution of confinement, our federal constitution requires the procedural regularity and exercise of care implied in the phrase ''due process.''

The constitutional considerations and statutory application discussed in this opinion clearly mandate the reversal of the orders of commitment entered by the two trial courts.

The commitment order of Ivan is reversed and remanded with instructions that lower court proceedings relating to Ivan's case, case number 12482, be dismissed.

The commitment order in Sandee's case, case number 12645, is vacated; the matter is remanded to the juvenile department of the Third Judicial District Court, Churchill County, for proceedings consistent with this opinion.

GUNDERSON, C. J., and MANOUKIAN, BATJER, and MOWBRAY, JJ., concur.