**133 Nev., Advance Opinion 28**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

A.J.,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
WILLIAM O. VOY, DISTRICT JUDGE,
Respondents,
    and
THE STATE OF NEVADA,
Real Party in Interest.

No. 70119

**FILED**

JUN 01 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
    CHIEF DEPUTY CLERK

Original petition for writ of mandamus or prohibition challenging a district court order adjudicating a minor as a delinquent.

*Petition granted.*

Philip J. Kohn, Public Defender, and Susan D. Roske, Chief Deputy Public Defender, Clark County; S. Alex Spelman, Law Student, SCR 49.5, Las Vegas,
for Petitioner.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Brandon L. Lewis, Deputy District Attorney, Clark County,
for Real Party in Interest.

BEFORE HARDESTY, PARRAGUIRRE and STIGLICH, JJ.

17-18193

*OPINION[1]*

By the Court, HARDESTY, J.:

In this original proceeding, we are asked to determine whether minors who are arrested for solicitation or prostitution, as demonstrated by the referral charge, facts of arrest, or other persuasive evidence, but are charged in juvenile court with offenses other than prostitution or solicitation, are entitled to the benefits of NRS 62C.240 precluding formal adjudication of delinquency and ensuring counseling and medical treatment services as part of a consent decree. We conclude that where a minor is arrested solely for solicitation or prostitution, NRS 62C.240 applies.

## FACTS AND PROCEDURAL HISTORY

Petitioner A.J. has been in foster care for most of her life. When A.J. was 15 years old, she was recruited by an older man into the Las Vegas sex trade. In July 2015, A.J. was stopped by a Las Vegas Metropolitan Police Department (LVMPD) officer while she was walking back and forth on Tropicana Avenue. A.J. initially refused to provide her identifying information to the police officers but later provided the requested information. During the stop, A.J. admitted that she had been working as a prostitute for the last three months. A.J. was then arrested for soliciting prostitution and loitering for the purpose of prostitution and transferred to Clark County Juvenile Hall.

---

[1]We direct the clerk of this court to amend the caption to name the petitioner as "A.J."




Due to the nature of her charges, A.J.'s case was transferred to the juvenile court's sexually exploited youth calendar. The State filed a delinquency petition charging A.J. with only obstructing an officer based on her refusal to provide identifying information (Petition 1). A.J. entered an admission to the charge and was adjudicated as a delinquent. She was placed on formal probation for a period of 12 months, with a suspended commitment to the Division of Child and Family Services (DCFS), and with various conditions, including no contact with persons and places involved in prostitution and home placement through the Clark County Department of Family Services (CCDFS).

A.J. was placed at St. Jude's Ranch for Children on GPS monitoring. Less than a month after placement, GPS monitoring was removed and A.J. ran away from St. Jude's. In September, LVMPD again stopped A.J. on Tropicana Avenue for suspected solicitation of prostitution. A.J. was subsequently arrested for soliciting prostitution after agreeing to perform a sexual act for a fee with an undercover police officer.

A.J. again appeared in juvenile court. A.J. was released to Child Haven because she lost her placement at St. Jude's after running away. The State filed a second petition (Petition 2), alleging a violation of probation for violating curfew and associating with places involved in prostitution. A.J. ran away again, resulting in the State filing a third petition (Petition 3), alleging violation of probation for being in an unauthorized location. The juvenile court then determined that A.J. would remain detained pending entry of a plea.

In October, A.J. admitted to a violation of probation on Petition 2, and Petition 3 was dismissed. A.J. was continued on formal

probation and was released to CCDFS once placement was located. A placement home was located in November, and the GPS ankle monitor was removed. A.J. ran away from her placement, and a writ of attachment was issued. A.J. was arrested on the writ, and the State filed a fourth petition alleging another violation of probation (Petition 4). A.J. appeared in juvenile court again and was ordered detained. A formal report and disposition was set and the juvenile court subsequently committed A.J. to DCFS for placement at the Caliente Youth Center.

A.J. petitions this court for a writ of mandamus or prohibition directing the juvenile court to vacate its orders adjudicating her as a delinquent and apply the provisions of NRS 62C.240.

## DISCUSSION

### Consideration of the writ petition

A writ of mandamus is available "to compel the performance of an act" that the law requires or to control an arbitrary or capricious exercise of discretion.[2] NRS 34.160. "Because . . . writs of mandamus are extraordinary remedies, we have complete discretion to determine whether to consider them." *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008).

Generally, we will not consider petitions for extraordinary relief when there is a "plain, speedy and adequate remedy in the ordinary

---

[2]Because the juvenile court acted within its jurisdiction in this case, we treat A.J.'s petition as one seeking mandamus. *See Goicoechea v. Fourth Judicial Dist. Court*, 96 Nev. 287, 289, 607 P.2d 1140, 1141 (1980) (holding that a writ of prohibition "will not issue if the court sought to be restrained had jurisdiction to hear and determine the matter under consideration"); *see also* NRS 34.320.

course of law." *State v. Eighth Judicial Dist. Court (Logan D.)*, 129 Nev. 492, 497, 306 P.3d 369, 373 (2013) (internal quotation marks omitted). Under NRS 62D.500(1), juvenile court orders are expressly appealable in an appellate court of competent jurisdiction, and this court has specifically stated that a minor generally has "a plain, speedy, and adequate remedy in the form of an appeal from any judgment adjudicating [the minor] a delinquent." *Cote H.*, 124 Nev. at 39, 175 P.3d at 908.

We routinely exercise our discretion to consider petitions for extraordinary relief in the interest of judicial economy when we are faced with important legal questions that need clarification. *Logan D.*, 129 Nev. at 497, 306 P.3d at 373. "In addition, [when a] petition involves a question of first impression that arises with some frequency, the interests of sound judicial economy and administration favor consideration of the petition." *Cote H.*, 124 Nev. at 39-40, 175 P.3d at 908.

The question of whether NRS 62C.240 applies where a minor is arrested for prostitution or solicitation, but the ensuing delinquency petition does not allege that the minor engaged in either of those offenses, is an important issue of first impression that juvenile courts will likely face in the future. *See* Chariane K. Forrey, *America's "Disneyland of Sex": Exploring the Problem of Sex Trafficking in Las Vegas and Nevada's Response*, 14 Nev. L.J. 970, 971 (2014) ("The [FBI] listed Las Vegas as a top thirteen city for high intensity child prostitution."). Thus, in the interest of judicial economy and because this case presents a significant and potentially recurring question of law, we exercise our discretion to consider the merits of A.J.'s petition.

*Interpretation of NRS 62C.240*

In 2015, the Legislature unanimously passed Assembly Bill (A.B.) 153, later codified as NRS 62C.240.[3] A.B. 153, 78th Leg. (Nev. 2015); 2015 Nev. Stat., ch. 146, § 6.5, at 570-71. NRS 62C.240 provides, in relevant part:

> 1. If the district attorney files a petition with the juvenile court alleging that a child who is less than 18 years of age has engaged in prostitution or the solicitation of prostitution, the juvenile court:
>
> (a) Except as otherwise provided in paragraph (b),[4] shall:
>
> (1) Place the child under the supervision of the juvenile court pursuant to a supervision and consent decree, without a formal adjudication of delinquency; and
>
> (2) Order that the terms and conditions of the supervision and consent decree include, without limitation, services to address the sexual exploitation of the child and any other needs of the child, including, without limitation, any counseling and medical treatment for victims of sexual assault in accordance with the provisions of NRS 217.280 to 217.350, inclusive.

The parties agree that NRS 62C.240 was enacted to "ensure[ ] that children are treated as victims of commercial sexual exploitation rather than juvenile delinquents." Hearing on A.B. 153 Before the

---

[3]NRS 62C.240 became effective upon passage on May 25, 2015. *See* 2015 Nev. Stat., ch. 146, § 7, at 571. Therefore, the statute was in effect at all relevant times regarding A.J.'s case history before the court.

[4]NRS 62C.240(1)(b) provides: "If the child originated from a jurisdiction outside this State, [the juvenile court] may return the child to the jurisdiction from which the child originated."

Assembly Judiciary Comm., 78th Leg. (Nev., March 3, 2015) (statement of Susan Roske, Chief Deputy Public Defender, Clark County Public Defender's Office). The parties disagree, however, as to what would trigger the application of NRS 62C.240. The State argues that, under the plain language of the statute, the application of NRS 62C.240 depends on the charges alleged in the petition filed by the district attorney. Specifically, the State contends that, because the triggering event for the application of NRS 62C.240 is the district attorney charging prostitution or solicitation, the statute does not limit prosecutorial discretion, and the charges alleged in the petition control.

A.J. argues that the statute's legislative history does not support the State's interpretation as it would allow the district attorney to avoid triggering the statute by alleging fictitious conduct that does not involve prostitution or solicitation even if the juvenile's conduct puts her within the class of those intended to be protected. Therefore, A.J. argues, an interpretation of NRS 62C.240 in line with the legislative intent and public policy dictates that when the underlying circumstances of the arrest, the referral charge, or other persuasive evidence demonstrate that prostitution or solicitation was the basis for the juvenile's arrest, the court must apply NRS 62C.240. We agree.

"[W]hen raised in a writ petition, this court reviews questions of statutory interpretation de novo." *Cote H.*, 124 Nev. at 40, 175 P.3d at 908. "[W]hen examining a statute, this court . . . ascribe[s] plain meaning to its words, unless the plain meaning was clearly not intended." *Id.* (internal quotation marks omitted). As noted, the State maintains that NRS 62C.240 unambiguously provides that the statute is triggered when the district attorney files a petition alleging solicitation or prostitution,

and this court cannot look beyond that plain language. "However, ambiguity is not always a prerequisite to using extrinsic aids." 2A Norman J. Singer & Shambie Singer, *Statutes and Statutory Construction* § 48:1, at 554 (7th ed. 2014).

"[T]he plain meaning rule . . . is not to be used to thwart or distort the intent of [the Legislature] by excluding from consideration enlightening material from the legislative" history. *Id.* at 555-56 (first alteration in original) (internal quotation marks omitted). As the United States Supreme Court declared, "even the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent." *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974). "And courts even have concluded that statutory interpretation necessarily begins with consideration of the legislative history to uncover any indications of legislative intent." 2A *Statutes and Statutory Construction, supra,* § 48:1, at 556 (internal quotation marks omitted). Thus, we next consider the Legislature's intent in enacting NRS 62C.240.

"[T]his court determines the Legislature's intent by evaluating the legislative history and construing the statute in a manner that conforms to reason and public policy." *Great Basin Water Network v. Taylor*, 126 Nev. 187, 196, 234 P.3d 912, 918 (2010). Furthermore, "statutes with a protective purpose should be liberally construed in order to effectuate the benefits intended to be obtained." *Cote H.*, 124 Nev. at 40, 175 P.3d at 908 (internal quotation marks omitted).

The legislative history of NRS 62C.240 indicates that the Legislature intended for the conduct and circumstances surrounding an arrest to trigger NRS 62C.240, not fictitious conduct the district attorney

SUPREME COURT
OF
NEVADA

(O) 1947A

alleges in the petition. Indeed, Jason Frierson, Chair of the Legislative Committee on Child Welfare and Juvenile Justice at the time, described factual scenarios that are nearly identical to the circumstances in this case. Mr. Frierson testified that "[u]nder [NRS 62C.240], a juvenile *arrested* for solicitation will be given a consent decree rather than being treated as a juvenile delinquent." Hearing on A.B. 153 Before the Senate Judiciary Comm., 78th Leg. (Nev., April 29, 2015) (emphasis added).

Here, the arresting officer stated in the declaration of arrest that A.J. was arrested for soliciting prostitution and loitering for the purpose of prostitution. The declaration of arrest does not indicate that A.J. was arrested for obstruction, yet that was the only charge the district attorney alleged in Petition 1. The circumstances leading to A.J.'s original delinquency adjudication are precisely those which the Legislature intended to trigger the application of NRS 62C.240.

The legislative history further demonstrates the intent for NRS 62C.240 was not to allow additional delinquency petitions to be filed for certain violations of the conditions of a consent decree. In contemplating a situation in which a juvenile was under court supervision and a consent decree pursuant to NRS 62C.240, Mr. Frierson testified that "[i]f conditions [of the consent decree] are violated, the district attorney *will not* be able to file a delinquent petition as a result of that violation." *Id.* (emphasis added); *see also* NRS 62C.240(3)(a). However, "[t]he district attorney *can* file an additional petition if it is an act not relating to the *circumstance surrounding the decree.*" Hearing on A.B. 153 Before the Senate Judiciary Comm., 78th Leg. (Nev., April 29, 2015) (testimony of Assemblyman Jason Frierson) (emphases added). Here, as a result of Petition 1, A.J. was placed on formal probation, the terms of which

included no contact with persons and places involved in prostitution. A.J. subsequently violated the terms of her probation, and the district attorney filed Petition 2. In the petition, the district attorney alleged that A.J. violated the terms of her probation by associating with places involved in prostitution. A.J. was then adjudicated as a delinquent for a second time based on an act that would have triggered NRS 62C.240 protection if she had been under court supervision pursuant to a consent decree rather than formal probation.

Finally, the Legislature also discussed prosecutorial discretion during hearings on NRS 62C.240. Assemblyman P.K. O'Neill asked John T. Jones, Jr., representing the Nevada District Attorneys Association, if NRS 62C.240 would help juveniles in circumstances where a police officer makes an arrest for engaging in prostitution, but charges a different, nonprostitution crime, "just to get [the juvenile] off the street." Hearing on A.B. 153 Before the Assembly Judiciary Comm., 78th Leg. (Nev., March 3, 2015). Mr. Jones replied: "What happens now in practice is that the officers book the kids under solicitation or some other type of prostitution-related crime. The district attorneys, especially in Clark County, will work with . . . [the] defense attorneys to find some other non-prostitution-related crime to plead them to." Id. The situation Mr. Jones described is the exact situation in which A.J. finds herself. She was arrested for solicitation of prostitution, but charged with obstruction to avoid the solicitation charge. Before the enactment of NRS 62C.240, exercising that type of prosecutorial discretion may have been in the juvenile's best interest. However, it is clear from the testimony cited above that the Legislature intended to make the practice of filing fictitious

charges in lieu of charges for solicitation or prostitution unnecessary by enacting NRS 62C.240.

Liberally construing the statute with what reason and public policy dictate, we hold that the Legislature clearly intended for NRS 62C.240 to be triggered when circumstances surrounding the arrest plainly demonstrate that the juvenile was arrested for engaging in prostitution or solicitation of prostitution. We further hold that the protections of NRS 62C.240 apply to prostitution-related crimes committed contemporaneous to an act that would otherwise trigger those protections, including, without limitation, trespassing, loitering, or curfew violations. However, our decision should not be read to insulate juveniles from delinquency adjudication based on different, nonprostitution-related crimes committed contemporaneous to an act that would otherwise trigger NRS 62C.240. For example, NRS 62C.240 would not apply to a juvenile who engages in prostitution and commits a robbery in the course of such conduct. In that circumstance, a district attorney is not prevented from filing a delinquency petition based on the robbery charge, independent of any charges for engaging in prostitution.

## CONCLUSION

The record before us clearly demonstrates that A.J. was arrested only for engaging in prostitution or the solicitation of prostitution. Therefore, we conclude that A.J. was entitled to protections afforded under NRS 62C.240, and the juvenile court arbitrarily and capriciously abused its discretion by adjudicating her as a delinquent.

Accordingly, we grant A.J.'s petition for extraordinary relief and direct the clerk of this court to issue a writ of mandamus instructing the juvenile court to set aside its earlier orders adjudicating A.J. as a delinquent and to enter a supervision and consent decree that includes as

part of its terms and conditions other services to address A.J.'s needs as specified in NRS 62C.240.[5]


_____, J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

_____

[5]We note that although NRS 62C.240 prevents a formal adjudication of delinquency for juveniles who fall within its purview, that statute does not appear to prevent a juvenile court from issuing an order for "any placement of the child that the juvenile court finds to be in the child's best interest," NRS 62C.240(3)(b), including commitment to a facility for detention of children, *see, e.g.*, NRS 62E.510-.540. However, this appears to conflict with this court's caselaw regarding placement of nondelinquent children in detention facilities. *See Minor v. Juvenile Div. of Seventh Judicial Dist. Court*, 97 Nev. 281, 287-88, 630 P.2d 245, 249-50 (1981) (specifically mentioning the training center located in Caliente, Nevada, and determining that "[t]raining centers are meant to house delinquents and delinquents only," and holding "that nondelinquent children coming within the jurisdiction of the juvenile court *may not be committed to the juvenile correctional institutions*" (emphasis added) (citation omitted)); *see also* NRS 63.030(1) (defining Caliente Youth Center as a "facility for the detention or commitment of children").

While we recognize this potential conflict, the issue is not before us in this case. Thus, we do not address it here.